UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

OLAJUWON ONIK CARTER,

      Petitioner,

      v.

GREGORY SKIPPER,

      Respondent.

_____/

Case No. 20-cv-12391

U.S. DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS* [#1]

### I. INTRODUCTION

Petitioner Olajuwon Onik Carter, confined at the Saginaw Correctional Facility in Freeland, Michigan, filed a petition for a writ of habeas corpus with this Court pursuant to 28 U.S.C. § 2254, challenging his conviction for carjacking, MICH. COMP. LAWS § 750.529a, and armed robbery, MICH. COMP. LAWS § 750.529. Having reviewed the pleadings and record, the Court agrees with Respondent that Mr. Carter's claims do not entitle him to the writ of habeas corpus. Accordingly, the Court will DENY the petition.

### II. FACTUAL BACKGROUND

Petitioner was convicted following a jury trial in the Wayne County Circuit Court, in which he was tried jointly with co-defendant Irell Dwayne Friday. This

Court recites verbatim the relevant facts regarding Petitioner's conviction from the Michigan Court of Appeals' opinion, which are presumed correct on habeas review. *See* 28 U.S.C. § 2254(e)(1); *see also Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009).

> Defendants' convictions arise from an August 14, 2014 attempted carjacking, armed robbery, and home invasion at the home of Danny and Olie Kauthar in Detroit, Michigan. That afternoon, Danny entered his 2013 Ford Flex in order to go to the store. Before Danny could back out of the driveway, a white or cream-colored car pulled in behind the Flex, blocking Danny from leaving. A man, whom Danny later identified as defendant Friday, approached the driver's side of the Flex carrying a gun. Another man, who was also carrying a gun, approached the passenger's side of the vehicle. He pointed the gun at the Flex and made an "up and down motion," as if he was indicating that Danny should get out. Danny exited the car, and Friday instructed Danny to hand over his keys. Danny ultimately cooperated, and Friday removed $340 from Danny's pocket after taking the keys. Friday then entered the car and attempted to start the vehicle, even though the car was already started. After fumbling with the controller, Friday exited the vehicle and moved toward the house, demanding to know which of Danny's keys opened the side door. Friday then broke a window with the handle of his gun in order to enter the house, where Olie and the couple's great-grandsons were located. Olie testified that Friday entered the house, pointed a gun at her, and instructed her to lie on the ground.
>
> Meanwhile, Danny was still standing at the car when an unidentified perpetrator pointed a gun at his back and ordered him into the house. Ignoring this command, Danny ran toward the third perpetrator, who was standing near the driver's side door of the perpetrators' car, pointing a gun at Danny. At trial, Danny identified the third perpetrator as defendant Carter. As he ran, Danny yelled for help, intending to attract the attention of his neighbors across the street, who were talking on their porch. Friday exited the home, and the three men entered their car and drove away.

2

> Soon after arriving at the scene, the police discovered Friday's cell phone in the Kauthars' yard. Danny watched as a police officer looked through the pictures on the phone, and he spontaneously identified Carter and Friday as the perpetrators in some of the pictures.

*People v. Carter*, No. 326442, 2017 WL 239481, at *1–2 (Mich. Ct. App. Jan. 19, 2017).  The Michigan Supreme Court vacated part of the Michigan Court of Appeals' decision and remanded the case back for reconsideration of Petitioner's claim that trial counsel was ineffective for failing to object to the in-court identification of Petitioner, in light of the Michigan Supreme Court's recent decision in *People v. Randolph*, 502 Mich. 1, 917 N.W.2d 249 (Mich. 2018).  The remainder of petitioner's application was denied because the Court was not persuaded that the questions presented should be reviewed by the Michigan Court of Appeals.  *People v. Carter,* 503 Mich. 891, 919 N.W.2d 269 (2018).

On remand, the Michigan Court of Appeals added the following additional facts to the above factual summary:

> During trial, Danny's teenaged great-grandson, DR, also identified Carter as one of those involved. But DR acknowledged "that he was not as confident about that" in-court identification as he had been when identifying Friday at a pretrial lineup. On cross-examination, DR admitted that he thought that he had confused defendants Carter and Friday in his testimony on direct examination, further admitting that "he only saw one" of the perpetrators "clearly."

*People v. Carter*, No. 326442, 2019 WL 286684, at *2 (Mich. Ct. App. Jan. 22, 2019).

On remand, the Michigan Court of Appeals held that trial counsel was not ineffective for failing to object to the in-court identifications. *Id*. Petitioner seeks habeas relief on the following grounds:

I.     Mr. Carter's rights to due process and effective assistance of counsel were violated by trial counsel's failure to object to the contaminated in-court identification by Danny Kauthar and request exclusion of the identification.

II.    Mr. Carter's rights to effective assistance of counsel were violated by trial counsel's failure to investigate the cell tower tracking data evidence on Carter's phone which would have proven he was not at the scene of the robbery.

III.   Mr. Carter's due process rights were violated when he was sentenced based on inaccurate information where no victim was asported, and where the offender did not exploit a victim's vulnerability.

IV.    Mr. Carter is entitled to resentencing because Michigan's statutory restitution scheme is unconstitutional insofar as it permits trial courts to order restitution based on facts never submitted to a jury or proven beyond a reasonable doubt.

### III. LEGAL STANDARD

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

     (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

     (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410–11.  "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  Therefore, to obtain habeas relief in federal court, a state inmate must show that the state court's rejection of his claim "was so lacking in justification that there

was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103. A habeas petitioner should be denied relief so long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *See Woods v. Etherton*, 136 S. Ct. 1149, 1152 (2016).

The Michigan Court of Appeals reviewed and rejected Petitioner's first claim involving the alleged suggestiveness of the identification procedures under a plain error standard because Petitioner failed to preserve the issue as a constitutional claim at the trial court level. The AEDPA deference applies to any underlying plain-error analysis of a procedurally defaulted claim. *See Stewart v. Trierweiler*, 867 F.3d 633, 638 (6th Cir. 2017).[1]

---

[1] Respondent urges this Court to deny this claim on the ground that it is procedurally defaulted because petitioner failed to object at trial. Petitioner argues in his first claim that counsel was ineffective for failing to object. Ineffective assistance of counsel may establish cause for procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451–52 (2000). Given that the cause and prejudice inquiry for the procedural default issue merges with an analysis of the merits of petitioner's defaulted claim, it would be easier to consider the merits of the claim. *See Cameron v. Birkett,* 348 F. Supp. 2d 825, 836 (E.D. Mich. 2004).

## IV. DISCUSSION

### A.  Claim #1: Suggestive Identification

Petitioner first claims that Danny's and DR's  in-court identifications of him as one of the perpetrators should have been suppressed because they were the fruit of suggestive identification procedures.[2]

Due process protects the accused against the introduction of evidence which results from an unreliable identification obtained through unnecessarily suggestive procedures.  *See Moore v. Illinois*, 434 U.S. 220, 227 (1977).  To determine whether an identification procedure violates due process, courts look first to whether the procedure was impermissibly suggestive; if so, courts then determine whether, under the totality of circumstances, the suggestiveness has led to a substantial likelihood of an irreparable misidentification.  *See Kado v. Adams*, 971 F. Supp. 1143, 1147–48 (E.D. Mich. 1997) (citing to *Neil v. Biggers*, 409 U.S. 188 (1972)).  Five factors should be considered in determining the reliability of identification evidence:

1. the witness's opportunity to view the criminal at the time of the crime;

2. the witness's degree of attention at the time of the crime;

3. the accuracy of the witness's prior description of the defendant;

---

[2] Because DR was a minor at the time of the offense, the Court will refer to him by his initials only to preserve his privacy.  *See* FED. R. CIV. P. 5.2(a).

4. the witness's level of certainty when identifying the suspect at the confrontation; and,

5. the length of time that has elapsed between the time of the crime and the confrontation.

*Biggers*, 409 U.S. at 199–200.  A criminal defendant has the burden of proving that the identification procedure was impermissibly suggestive.   It is only after a defendant can meet this burden of proof that the burden then shifts to the prosecutor to prove that the identification was reliable independent of the suggestive identification procedure.  *See United States v. Wade*, 388 U.S. 218, 240, n.31 (1967).  If a defendant fails to show that the identification procedures were impermissibly suggestive, or if the totality of the circumstances indicates that the identification is otherwise reliable, no due process violation has occurred.  So long as no substantial likelihood of misidentification exists, the jury must determine the ultimate weight given to the identification.  *See United States v. Hill*, 967 F.2d 226, 230 (6th Cir. 1992).

Petitioner initially claims that Danny Kauthar's in-court identification was tainted by an earlier photographic identification procedure at the crime scene, where Kauthar identified petitioner as one of the perpetrators after seeing a picture of petitioner on co-defendant Friday's cell phone, which had been left at the crime scene.

The Michigan Court of Appeals rejected the claim at great length, noting
that on-scene identifications of criminal suspects are in general permissible.
*People v. Carter*, 2017 WL 239481, at \*4.  The Michigan Court of Appeals further
observed that "the Due Process Clause does not require a preliminary judicial
inquiry into the reliability of an eyewitness identification when the identification
was not procured under unnecessarily suggestive circumstances arranged by law
enforcement."  *Id*. at \*5 (quoting *Perry v. New Hampshire*, 565 U.S. 228, 248
(2012)).  The Michigan Court of Appeals concluded that the on-scene
photographic identification of petitioner by Mr. Kauthar after he saw a picture of
petitioner on Mr. Friday's cell phone was not unduly suggestive:

> Considering the totality of the circumstances, Danny's on-scene
> identifications of defendants on the recovered cell phone were not
> based on an impermissibly suggestive procedure leading to a
> substantial likelihood of misidentification. The police did not know
> what was on the phone when it was found and did not ask Danny to
> look at it to see if the perpetrators were pictured. Rather, the officer
> found the phone in the grass, and Danny asked if they could look at
> pictures saved on the phone. As the officer perused the pictures,
> Danny watched and spontaneously identified the three perpetrators.
> Although the facts of this case are distinguishable from the facts in
> *Perry*, *Hampton*, and *Metcalf*, they share a common thread: the fact
> that the identifications were not planned or prearranged by the police.
> *See Perry*, 565 U.S. at 233. Moreover, the identifications here
> ultimately provided an immediate lead for the police and allowed
> Danny to make the identifications while his memory was fresh.  *See*
> *Libbett*, 251 Mich. App. at 362–63.
>
> Because Danny's on-scene identifications of Carter on the recovered
> cell phone did not involve an impermissibly suggestive procedure,
> orchestrated by the police, that led to a substantial likelihood of

misidentification, there was no plain error in allowing Danny's subsequent in-court identification.

*People v. Carter*, 2017 WL 239481, at *6 (additional citations and footnote omitted).

The Michigan Court of Appeals' decision was reasonable, precluding habeas relief. In the present case, there was no due process violation because the police did not initiate the identification procedure. Instead, Mr. Kauthar asked to view Mr. Friday's cell phone to see if he could identify any perpetrators. "[T]he Supreme Court has never held that an in-court identification requires an independent basis for admission in the absence of an antecedent improper pre-trial identification." *Cameron v. Birkett*, 348 F. Supp. 2d 825, 843 (E.D. Mich. 2004). Moreover, "the Due Process Clause does not require a preliminary judicial inquiry into the reliability of an eyewitness identification when the identification was not procured under unnecessarily suggestive circumstances arranged by law enforcement." *Perry*, 565 U.S. at 248. The identification procedure, even if procured in part by the police, was not unduly suggestive as it basically amounted to an on-scene identification.

In *Simmons v. United States*, 390 U.S. 377 (1968), the Supreme Court upheld the showing of photographs of the suspects to the witnesses at the crime scene when a serious felony had been committed, the perpetrators were still at

large, inconclusive clues lead to the defendant, and the F.B.I. needed to determine quickly whether their investigation was on the right track. *Id.*, at 384–85.

In *United States v. Lett*, 782 F. App'x 429, 432–33 (6th Cir. 2019), the Sixth Circuit held it was not unduly suggestive for a federal agent to take the defendant's picture with a cellphone, show it to vendors at a gun show, and ask them if the picture depicted one of the men they had witnessed stealing guns. The Sixth Circuit noted that both vendors interacted with the defendant that day and spoke with him as he stood just a few feet away. *Id.* The defendant also stole a gun in front of one of them, spoke with others as his accomplice stole another gun, and the vendors identified defendant's photograph the day of the crimes, not weeks or months later. *Id.*

The Sixth Circuit has repeatedly held that bringing crime victims immediately to the scene of the crime to identify a defendant is not impermissible or a violation of due process. *See Drew v. Parker*, 244 F. App'x 23, 27–28 (6th Cir. 2007); *United States v. Craig*, 198 F. App'x 459, 466 (6th Cir. 2006); *Bruner v. Perini*, 875 F.2d 531, 534–35 (6th Cir. 1989); *Stidham v. Wingo*, 482 F.2d 817, 818–19 (6th Cir. 1973). "Prompt on-the-scene confrontation is actually consistent with good police work." *Craig*, 198 F. App'x at 466, n.1 (citing *Valtin v. Hollins*, 248 F. Supp. 2d 311, 318 (S.D.N.Y. 2003) (quoting *United States ex rel. Cummings v. Zelker*, 455 F.2d 714, 716 (2d Cir. 1972)). "Police officers should

11

not have to limit themselves to police station line-ups when '[a]n opportunity for a quick, on-the-scene identification arises.'" *Id*. (quoting *United States v. King*, 148 F.3d 968, 970 (8th Cir. 1998)). Conducting an on-scene showup is actually "consistent with legitimate law enforcement purposes, such as allowing identification before the suspect has had the opportunity to alter his appearance and permitting the quick release of innocent persons." *Drew*, 244 F. App'x at 28; *see also Craig*, 198 F. App'x at 466, n.1. In addition, "handcuffs and police custody are necessary incidents of an on-the-scene identification that do not render the pre-trial identification procedure unnecessarily suggestive." *Craig*, 198 F. App'x at 466, n.1 (citing *King*, 148 F.3d at 970; *Tobias v. Portuondo*, 367 F. Supp. 2d 384, 392 (W.D.N.Y. 2004)). Petitioner is not entitled to habeas relief because the Michigan Court of Appeals' ruling that the on-scene identification procedure was not unduly suggestive was neither contrary to nor an unreasonable application of clearly established federal law. *Drew*, 244 F. App'x at 28.

Petitioner also claims that DR's in-court identification should have been suppressed because he identified Petitioner only for the first time in court at trial. Mr. Carter fails to show that DR's in-court identification could have been suppressed for being unduly suggestive. Although the Sixth Circuit in *Hill* held that the *Biggers* analysis for suggestive identifications applies to identifications made for the first time in court, *see Hill*, 967 F.2d at 232, Sixth Circuit precedent

does not constitute "clearly established Federal law, as determined by the Supreme Court" and thus "cannot form the basis for habeas relief under [the] AEDPA." *Parker v. Matthews*, 567 U.S. 37, 48–49 (2012).  This Court notes that "the Supreme Court has never held that an in-court identification requires an independent basis for admission in the absence of an antecedent improper pre-trial identification." *Cameron v. Birkett*, 348 F. Supp. 2d at 843.  Moreover, "the Due Process Clause does not require a preliminary judicial inquiry into the reliability of an eyewitness identification when the identification was not procured under unnecessarily suggestive circumstances arranged by law enforcement." *Perry*, 565 U.S. at 248.  Admission of DR's in-court testimony against Petitioner would not be grounds for habeas relief because there are no Supreme Court cases that have extended the protections of *Biggers* and its progeny to cases where the eyewitness first identifies the petitioner in court. *See Luckett v. Adams*, 200 F. App'x 703, 704 (9th Cir. 2006).  Indeed, "[n]one of these cases has set any guidelines for in-court identification procedures nor indicated that in-court identification must be made in a way that is not suggestive."  *Id*. (citing to *United States v. Domina*, 784 F.2d 1361, 1368 (9th Cir. 1986)).  "The Supreme Court has not extended its exclusionary rule to in-court identification procedures that are suggestive because of the trial setting." *Domina*, 784 F.2d at 1369.

Other courts have reached similar conclusions. *See Gunnels v. Cartledge*, 669 F. App'x 165, 165–66 (4th Cir. 2016) (denying a certificate of appealability on the petitioner's claim that the "district court erred in ruling that a victim's identification of [the petitioner] was admissible" where the petitioner claimed that the district court should have weighed the factors in *Biggers* "in determining whether the victim's in-court identification of [the petitioner] was admissible," stating, "[T]he Supreme Court of South Carolina has 'conclude[d], as the majority of courts have, that *Neil v. Biggers* does not apply to in-court identifications and that the remedy for any alleged suggestiveness of an in-court identification is cross-examination and argument.'" *State v. Lewis*, 363 S.C. 37, 609 S.E.2d 515, 518 (2005). This refusal to extend *Biggers* to in-court identifications forecloses [the petitioner's] argument on federal habeas review that *Biggers* applies to his case.").

Even the Sixth Circuit has seemed to back off from their holding in *Hill* in light of the Supreme Court decision in *Perry*. In *United States v. Hughes*, 562 F. App'x 393, 398 (6th Cir. 2014), the Sixth Circuit found an in-court identification procedure constitutional. There, eyewitnesses to four restaurant robberies identified a defendant as the robber when asked whether the robber they saw was present in the courtroom. *Id*. The Sixth Circuit reasoned that the procedure was not so impermissibly suggestive as to violate defendant's due process rights. *Id*.

14

The court made its finding notwithstanding the defendant's argument that the procedure was suggestive because the only other African American males in the courtroom during trial were the judge, the two Assistant United States Attorneys, and a United States Marshal.  *Id*.  In so ruling, the Sixth Circuit noted:

> Further, the Supreme Court has recently made clear that due process rights of defendants identified in the courtroom under suggestive circumstances are generally met through the ordinary protections in trial. *Perry v. New Hampshire*, —— U.S. ——, 132 S.Ct. 716, 728–29, 181 L.Ed.2d 694 (2013). These protections include the right to confront witnesses; the right to representation of counsel, who may expose flaws in identification testimony on cross-examination and closing argument; the right to jury instructions advising use of care in appraising identification testimony; and the requirement of proof beyond a reasonable doubt.

*Id*.  In the absence of any Supreme Court caselaw extending *Biggers* to in-court identifications, or any Michigan law to the same effect, Petitioner is unable to establish that DR's in-court identification could have been suppressed for being unduly suggestive.   Petitioner is not entitled to relief on his suggestive identification claim.


### B. Claim #2: Ineffective Assistance of Counsel

Petitioner alleges he was denied the effective assistance of counsel.  To prevail on his ineffective assistance of counsel claims, petitioner must show that the state court's conclusion regarding these claims was contrary to, or an

unreasonable application of, *Strickland v. Washington*, 466 U.S. 668 (1984). *See Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). Strickland established a two-prong test for claims of ineffective assistance of counsel: the petitioner must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687.

As part of his first claim, Petitioner argues that trial counsel was ineffective for failing to move to suppress the identifications of Petitioner by Mr. Kauthar and DR because the identification procedures were unduly suggestive. Since Petitioner did not show that the identification procedures were unduly suggestive, he failed to demonstrate that his lawyer was ineffective for failing to move for suppression of the identifications. *See Perkins v. McKee*, 411 F. App'x 822, 833 (6th Cir. 2011).

Moreover, although defense counsel did not move for the suppression of Mr. Kauthar's or DR's in-court identifications, he did question both witnesses about possible problems with their positive identification of Petitioner as being one of the perpetrators. ECF No. 8-7, PageID.410–420, 490–91, 497–498. Counsel got Mr. Kauthar to admit that a third suspect in the photograph, who was never caught, looked a lot like Petitioner. *Id*. at PageID.410–414, 427–428. Mr. Kauthar admitted it was hard to give facial descriptions of the second and third perpetrators or describe their hair style because he was focused primarily on the handgun pointed at him. *Id*. at PageID.416–418. Counsel was able to get DR on cross-

examination to admit that he had confused Petitioner with his co-defendant during his testimony on direct examination and further acknowledged that "he only saw one" of the perpetrators "clearly." ECF No. 8-7, PageID.497–498. Even if counsel had not objected to the in-court identification of petitioner, the decision to attack the credibility of Danny Kauthar's and DR's identification of Petitioner through cross-examination was a reasonable trial strategy that defeats Petitioner's ineffective assistance of trial counsel claim. *See Scott v. Elo*, 100 F. App'x 332, 333–34 (6th Cir. 2004). Petitioner is not entitled to relief on his first claim.

Petitioner in his second claim argues that trial counsel was ineffective for not calling an expert on cell phone tower tracking data for his phone at the time of the robbery and carjacking to bolster his alibi defense that he was at the apartment that he shared with his sister, Shaylon Friday, when the offenses occurred.

The Michigan Court of Appeals rejected this claim on the initial appeal as follows:

> Even if we assume, without deciding, that defense counsel was asked to investigate cell phone tower tracking records for Carter's phone at the time of the offenses, and that counsel's failure to investigate fell below an objective standard of reasonableness, Carter has failed to establish that he was prejudiced by counsel's alleged deficiency because he has not demonstrated a reasonable probability that the result of the proceeding would have been different had the cell phone records been presented at trial.

> One of the victims, Danny Kauthar, identified Carter as the third perpetrator, who was standing by the getaway car with a gun as Danny fled. In addition, Danny's great-grandson, DR, testified at trial

17

that he saw both Friday and Carter at the crime scene. Carter attempts to undercut the identification testimony, noting that Danny misidentified Friday at a lineup, emphasizing that DR provided inconsistent testimony regarding defendants' roles at the crime scene, and arguing that he was deemed guilty merely based on his association with Friday in pictures found on Friday's cell phone. However, these potential issues related to the identification testimony were already presented and rejected by the jury. Accordingly, we find it unlikely that the phone records would have affected the outcome.

Specifically, Carter pursued an alibi defense at trial, through which he claimed that he was at the apartment during the crimes. He relied on Shaylon to testify to his whereabouts, but her credibility was called into question. At trial, she testified that Carter was with her from 1:00 to 10:00 p.m. At the *Ginther* hearing, however, she claimed that she was in and out of the apartment during that afternoon because she "had left to go find [herself] something to wear." In addition, at trial and at the *Ginther* hearing, Shaylon testified that, on August 14, she was caring for her son and Carter's only child and had asked him to babysit both children, but Carter's mother testified that she cared for Carter's daughter "all day" on August 14.

Most importantly, the phone records do not make Shaylon's testimony more believable. The parties' experts both agree that, based on the data showing the use of the Joy Road tower, Carter's phone could not have been at the crime scene when it was used on August 14 at 3:47 p.m. and from 7:32 to 8:01 p.m. Although the phone never connected to a tower near the crime scene, it was unused from 1:01 to 2:01 p.m., from 4:34 to 7:15 p.m., and from 8:01 to 9:59 p.m.[3] There is no evidence that establishes more probably than not that the crimes occurred when the phone connected to the Joy Road tower as opposed to when the location of the phone was unknown. The reporting officer testified that, based on Danny's statement to her, she wrote in her report that the crimes occurred at 8:00 p.m. But at the preliminary examination, Danny testified that the crimes occurred at 5:00 p.m. At trial, he thought the crimes occurred around 2:30 or 3:30 p.m. The

---

[3] When Carter used the phone at 2:01, 2:08, and 3:47 p.m., he was in contact with Friday. A jury could infer that they were planning or rehashing the crimes at those times. (Footnote original).

neighbor who called 9–1–1 thought the crimes occurred between 4:00 and 6:00 p.m. Police activity logs show that the police arrived between 8:15 and 8:30 p.m., but both Danny and the 9–1–1 caller testified that there was a delay between the 9–1–1 call and the police response. Even in light of the fact that the last activity on Friday's phone, which was left at the scene, occurred at 7:45 p.m., the gaps in activity on Carter's phone make it very plausible that the carjacking occurred while the cell phone could not be tracked, whether because it was at a separate location when the crime occurred or because Carter simply did not use his cell phone during the incident.

Even if the crimes occurred when the phone was connecting to the Joy Road tower, the records do not prove that it was Carter, as opposed to someone else, using the phone. Although Carter's family testified that he always had it in his possession, the phone was registered to Carter's mother, and nothing prevented Carter or his mother from lending it to someone else during the time at which Carter committed the crimes.

In sum, Carter cannot establish that the outcome of the trial would have been different but for defense counsel's failure to investigate and present the cell phone tracking records. Carter was not denied the effective assistance of counsel on this basis.

*People v. Carter*, 2017 WL 239481, at *3–4. A defense counsel has no obligation to present evidence or testimony that would not have exculpated the defendant. *See Millender v. Adams*, 376 F.3d 520, 527 (6th Cir. 2004) (internal quotation omitted). Petitioner is not entitled to relief on his ineffective assistance of counsel claim because, for the reasons stated in greater detail by the Michigan Court of Appeals, he failed to show that these cellular phone records would have proven to be exculpatory. *See, e.g., Daniel v. Palmer*, 719 F. Supp. 2d 817, 829 (E.D. Mich.

2010), *rev'd on other grounds sub nom. Daniel v. Curtin*, 499 F. App'x 400 (6th Cir. 2012). Petitioner is not entitled to relief on his second claim.

### C. Claim #3: The Sentencing Guidelines

Petitioner claims that several offense variables under the Michigan Sentencing Guidelines were incorrectly scored.

Petitioner's claim that the state trial court incorrectly scored or calculated his sentencing guidelines range under the Michigan Sentencing Guidelines is not a cognizable claim for federal habeas review, because it is a state law claim. *See Tironi v. Birkett*, 252 F. App'x 724, 725 (6th Cir. 2007); *Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003). Errors in the application of state sentencing guidelines cannot independently support habeas relief. *See Kissner v. Palmer*, 826 F.3d 898, 904 (6th Cir. 2016). Petitioner had "no state-created interest in having the Michigan Sentencing Guidelines applied rigidly in determining his sentence." *See Mitchell v. Vasbinder*, 644 F. Supp. 2d 846, 867 (E.D. Mich. 2009). "[I]n short, Petitioner had no federal constitutional right to be sentenced within Michigan's guideline minimum sentence recommendations." *Doyle v. Scutt*, 347 F. Supp. 2d 474, 485 (E.D. Mich. 2004). Any error by the trial court in calculating petitioner's guideline score would not merit habeas relief. *Id*. Petitioner's claim that the state trial court improperly departed above the correct sentencing

guidelines range would thus not entitle him to habeas relief, because such a departure does not violate any of Petitioner's federal due process rights. *Austin v. Jackson*, 213 F.3d 298, 301 (6th Cir. 2000).

### D.  Claim #4: Restitution

Petitioner does not state a claim upon which federal habeas relief can be granted.  Where a habeas petitioner is not claiming the right to be released but is challenging the imposition of a fine or other costs, he may not bring a petition for a writ of habeas corpus. *United States v. Watroba*, 56 F.3d 28, 29 (6th Cir. 1995). Continuing liability under a restitution order is like a fine-only conviction and is not a serious restraint on liberty as to warrant habeas relief. *Barnickel v. United States*, 113 F.3d 704, 706 (7th Cir. 1997) (quoting *Tinder v. Paula*, 725 F.2d 801, 805 (1st Cir. 1984)); *see also Flores v. Hickman*, 533 F. Supp. 2d 1068, 1085 (C.D. Cal. 2008) (imposition of restitution order as part of California state sentence could not be challenged under habeas statute because restitution did not affect duration of habeas petitioner's state custody).  Because the appropriate relief would be an amendment of the court's order of restitution and not release from custody, the grant of a writ of habeas corpus or other postconviction relief would be inappropriate. *United States v. Zaragoza*, 16 F. Supp. 2d 1111, 1112 (N.D. Ind. 1998).

Petitioner's current restitution order is not a sufficient restraint on his liberty to warrant habeas relief.  Moreover, Petitioner still has available state remedies if he cannot pay this restitution.   Under MICH. COMP. LAWS § 780.766 (12), Petitioner may, at any time, petition the sentencing judge or their successor to modify the payment method and the sentencing judge may modify the payment method if the court determines that payment under the order would impose a manifest hardship to the defendant or his family.  In addition, MICH. COMP. LAWS § 780.766(14) indicates that a defendant shall not be incarcerated for a violation of probation or parole for failure to pay the ordered restitution unless either the court or the parole board determines that the defendant has the resources to pay the ordered restitution and has not made a good faith effort to do so.  If Petitioner's parole was either extended or revoked due to his failure to pay restitution, he would then be "in custody" and this Court would have the jurisdiction to hear his claim.  However, until such time, the threat that Petitioner's liberty will be severely restrained is "too speculative to warrant the exercise of federal habeas jurisdiction." *Tinder*, 725 F.2d at 806.  Petitioner is not entitled to relief on his fourth claim.

### E. Certificate of Appealability

The Court will also deny a certificate of appealability.  In order to obtain a certificate of appealability, an inmate must make a substantial showing of the

denial of a constitutional right.   28 U.S.C. § 2253(c)(2).   To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000).   When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong.   *Id*. at 484.   "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."   Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. § 2254.

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because reasonable jurists would not find this Court's assessment of Petitioner's claims to be debatable or wrong. *See Dell v. Straub*, 194 F. Supp. 2d 629, 659 (E.D. Mich. 2002).

Petitioner is denied leave to appeal *in forma pauperis* because he did not file an application for pauper status.   FED. R. APP. P. 24(a)(1).

## V. CONCLUSION

For the reasons discussed above, Mr. Carter's petition for a writ of habeas corpus [#1] is DENIED.

IT IS FURTHER ORDERED that the Court DECLINES to issue a certificate of appealability because Mr. Carter has not made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

IT IS FURTHER ORDERED that leave to appeal *in forma pauperis* is DENIED.

**IT IS SO ORDERED.**

Dated:  January 31, 2022          /s/ Gershwin A. Drain
                                  GERSHWIN A. DRAIN
                                  UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
January 31, 2022, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Case Manager